UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

BARBARA SUNITA PHILPOT,

    Plaintiff,

v.                                                      Case No:   6:16-cv-417-Orl-40TBS

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

## REPORT AND RECOMMENDATION

Plaintiff Barbara Philpot appeals to this Court from the Commissioner of Social Security's final decision to deny her application for disability insurance benefits and supplemental security income. I have reviewed the record, including the administrative law judge's ("ALJ") decision, the exhibits, and the joint memorandum submitted by the parties. For the following reasons, I respectfully recommend that the Commissioner's final decision be **affirmed**.

### I. Background[1]

At the time of the administrative hearing, Plaintiff was thirty-nine years old and had completed high school with a special diploma (Tr. 41). She alleged a disability onset date of June 18, 2011 (Tr. 22). On March 15, 2012, she applied for benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. § 416, 423 (Tr. 206-212). Her claims were denied at the initial level (on June 19, 2012) and on reconsideration (on September 26, 2012) (Tr. 113-125, 128-139). At Plaintiff's request, an ALJ conducted a hearing on

---

[1] The information in this section comes from the parties' joint memorandum filed on December 16, 2016 (Doc. 19).

January 22, 2014 (Tr. 37-60). The ALJ issued an unfavorable decision on May 27, 2014 (Tr. 17-36). On January 8, 2016, the Appeals Council denied Plaintiff's petition for review of the ALJ's decision (Tr. 1-6). Thus, the ALJ's decision is the Commissioner's final decision and this appeal timely followed (Doc. 1). Plaintiff has exhausted her administrative remedies and her case is ripe for review.

## II. The ALJ's Decision

When determining whether an individual is disabled, the ALJ must follow the Commissioner's five-step sequential evaluation process set out in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4). The evaluation process requires the ALJ to determine whether the claimant: (1) is currently employed; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals an impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform past relevant work; and (5) retains the ability to perform work in the national economy. See Phillips v. Barnhart, 357 F.3d 1232, 1237-1240 (11th Cir. 2004). The claimant bears the burden of persuasion through step four and at step five, the burden shifts to the Commissioner. Id., at 1241 n.10; Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987).

The ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since her June 18, 2011 alleged onset date (Tr. 22). At step two, the ALJ found Plaintiff severely impaired by obesity, hypertensive cardiac disease, dysphagia associated with Chiari I formation, obstructive sleep apnea, iron deficiency anemia, and borderline intellectual functioning (Tr. 22-23). At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926) (Tr. 23-25).

Before proceeding to step four, the ALJ decided that Plaintiff had the residual functional capacity ("RFC") to,

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) but with the use of a cane for ambulation; no climbing ladders, ropes, scaffolds; no work at heights or with dangerous moving machinery; no crawling; only occasional climbing stairs or ramps; occasional stooping, crouching, kneeling, balancing; and must avoid exposure to concentrated pulmonary irritants and excessive vibration. Additionally, the claimant is limited to no more than simple tasks with only occasional change in the work setting, and concentration and attention limited to two hours at a time before requiring the opportunity for a regular work break. She must also avoid work requiring strict production quotas or a fast-pace.

(Tr. 25-29). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work (Tr. 30). But, the ALJ ultimately concluded at step five that there were other jobs in the national economy – like table sorter, call out operator, and telephone information clerk – that Plaintiff could perform and therefore, she was not disabled (Tr. 30-31).

### III. Standard of Review

The scope of the Court's review is limited to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's findings are supported by substantial evidence. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla but less than a preponderance. It is such relevant evidence that a reasonable person would accept as adequate to support a conclusion." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted).

When the Commissioner's decision is supported by substantial evidence the district court will affirm even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). The district court "may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" Id. "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (per curiam); accord Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (the court must scrutinize the entire record to determine the reasonableness of the factual findings).

## IV. Discussion

### A. Plaintiff's RFC Assessment is Based on Substantial Evidence

A claimant's RFC "is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); see also 20 CFR § 416.945. In other words, the RFC is "the most a claimant can still do despite [her] limitations." Lacina v. Comm'r Soc. Sec., 606 F. App'x 520, 526 (11th Cir. 2015) (quoting 20 C.F.R. § 416.945(a)(1)); Sanchez v. Comm'r Soc. Sec., 507 F. App'x 855, 858 (11th Cir. 2013); McCrea v. Astrue, 407 F. App'x 394, 396 n.2 (11th Cir. 2011); Davis v. Comm'r of Soc . Sec., No. 6:12-cv-1694-Orl-36TBS, 2013 WL 6182235, at *5 (M.D. Fla. Nov. 25, 2013). The determination "is within the authority of the ALJ and the assessment should be based upon all of the relevant evidence of a claimant's remaining ability to do work despite her impairments." Beech v. Apfel, 100 F. Supp. 2d 1323, 1331 (S.D. Ala. 2000) (citing Lewis, 125 F.3d at 1440).

Plaintiff argues that in formulating her RFC, the ALJ failed to account for all of her limitations identified by non-examining state agency physicians (Doc. 19 at 6-10). At the initial and reconsideration level, Catharina Eeltink, Ph.D. opined that Plaintiff had moderate difficulties in maintaining concentration, persistence or pace; Plaintiff was moderately limited in her ability to respond appropriately to changes in the work setting; and Plaintiff was moderately limited in her ability to respond appropriately to changes in the work setting (Tr. 90, 94-95, 103, 107-108). Dr. Eeltink opined that Plaintiff "would have difficulties with maintaining attention and concentration for extended periods in completing a workday without interruptions from psychologically based symptoms. However, claimant is able to maintain attention and concentration for two hours at a time in an eight-hour workday." (Tr. 95). Dr. Eeltink also said Plaintiff "may have difficulty concentrating on detailed or simultaneous demands, but she is mentally capable of well-structured task activity." (Tr. 108). The ALJ gave these opinions "great weight." (Tr. 29).

Plaintiff argues that the ALJ failed to incorporate the opinion that she needed "well-structured tasks," simple routines, and infrequent changes into her RFC assessment, and that the ALJ failed explain why these limitations were excluded from her RFC (Doc.19 at 9; Tr. 94, 107). Plaintiff's argument is not persuasive. She has not demonstrated that the limitation of "well-structured task activity" requires additional limitations beyond the ALJ's determinations that she is limited to "simple tasks with only occasional change in the work setting," and the avoidance of "work requiring strict production quotas or a fast-pace." (Tr. 25). Regarding the work place change restriction, Plaintiff acknowledges that the ALJ limited her to "only occasional change in the work setting," but she argues that this is "clearly different" from "infrequent change." (Doc. 19 at 9). Plaintiff has not provided any rationale, or legal basis for her contention that "occasional change" and "infrequent

- 5 -

change" materially differ or that the ALJ's inclusion of the term "occasional change" is materially inconsistent with the conclusions of the state agency consultants. The ALJ is not required to use magic words in the RFC and "there is no requirement that the ALJ include every limitation verbatim into her RFC determination[.]" Hilton v. Comm'r Soc. Sec., Case No. 6:14-cv-1339-Orl-GJK, 2016 WL 561364, at *3 (M.D. Fla. Feb. 12, 2016); Billups v. Colvin, No. 2:12-cv-815-TFM, 2013 WL 6840383, at *8 (M.D. Ala. Dec. 27, 2013). Plaintiff's RFC assessment incorporates all of her limitations as found by the ALJ and therefore, I respectfully recommend that the district court overrule this objection to the ALJ's final decision.

      B. The ALJ Posed an Appropriate Hypothetical Question to the Vocational Expert

      The ALJ's decision is based in part on the testimony of a vocational expert ("VE"). Plaintiff argues that the ALJ erred by posing a hypothetical to the VE that failed to account for her mental limitations outlined in section A, supra. (Doc. 19 at 13-15). In this Circuit, it is well established that when "the ALJ elects to use a [sic] vocational testimony to introduce independent evidence of the existence of work that a claimant could perform, the ALJ must pose a hypothetical question that encompasses all of the claimant's severe impairments in order for the VE's testimony to constitute substantial evidence." Chavanu v. Astrue, No. 3:11-cv-388-J-TEM, 2012 WL 4336205, at *9 (M.D. Fla. Sept. 21, 2012) (citing Pendley v. Heckler, 767 F.2d 1561, 1563 (11th Cir. 1985)); Frizzo v. Astrue, No. 6:11-cv-1318-ORL-31TEM, 2012 WL 3668049, at *12 n. 12 (M.D. Fla. Aug. 12, 2012); see also Gainey v. Comm'r Soc. Sec., No. 6:12-cv-1579-Orl-DAB, 2014 WL 505117, at *7 (M.D. Fla. Feb. 7, 2014). Plaintiff concedes that the hypothetical question the ALJ asked the VE included all of the limitations in her RFC assessment (Doc. 19 at 14). Because I have concluded that Plaintiff's RFC adequately covers her mental limitations, I

respectfully recommend that the district judge overrule this objection to the Commissioner's decision.

### C. The ALJ Properly Evaluated Plaintiff's Credibility

Plaintiff argues that the ALJ's determination concerning her credibility is not based on substantial evidence in that the ALJ failed to properly evaluate Plaintiff's subjective complaints (Doc.19 at 15-17). "[C]redibility determinations are the province of the ALJ," and the Court should "not disturb a clearly articulated credibility finding supported by substantial evidence." Mitchell v. Comm'r of Soc. Sec., 771 F.3d 780, 782 (11th Cir. 2014). The ALJ made the following assessment of Plaintiff's credibility:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

(Tr. 26).

Plaintiff objects to this "boilerplate" language because it "does not offer enough reasoning to support the ALJ's determination that the claimant is not credible" (Doc. 19 at 17). She argues that the phrasing used by the ALJ is part of a "template" and is "hackneyed language seen univer[s]ally in ALJ decisions [that] adds nothing." (Id.) (citing Shauger v. Astrue, 675 F.3d 690, 696 (7th Cir. 2012)). Relying on Bjornson v. Astrue, 671 F.3d 640, 645-46 (7th Cir. 2012), Plaintiff argues that the ALJ's use of boilerplate language precludes the district court from making an adequate review of the ALJ's decision. In Bjornson the Court considered the following language embedded in an ALJ's decision:

> After careful consideration of the evidence, the undersigned [administrative law judge] finds that the claimant's medically

> determinable impairments would reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

671 F.3d at 644; see also Shauger, 675 F.3d at 696. Judge Posner, writing on behalf of the Court of Appeals for the Seventh Circuit criticized the template:

> Such boilerplate language fails to inform us in a meaningful reviewable way of the specific evidence the ALJ considered in determining that claimant's complaints were not credible. More troubling, it appears that the Commissioner has repeatedly been using this same boilerplate paragraph to reject the testimony of numerous claimants, without linking the conclusory statements contained therein to evidence in the record or even tailoring the paragraph to the facts at hand, almost without regard to whether the boilerplate paragraph has any relevance to the case.

671 F.3d at 645.

As this Court knows, opinions from the Seventh Circuit are not binding on it, and while the Eleventh Circuit Court of Appeals has not yet rendered a decision on the issue, the Bjornson opinion has been rejected by district courts in the Eleventh Circuit: Rosado v. Comm'r Soc. Sec., No. 5:13-cv-519-Oc-18PRL, 2015 WL 892366, at *4 (M.D. Fla. Mar. 2, 2015); Hadley v. Comm'r Soc. Sec., Civil No. 5:13-cv-593-Oc-18PRL, No. 2015 WL 327512, at *7 (M.D. Fla. Jan. 23, 2015); Decook v. Colvin, No. 312-cv-1122-J-JRK, 2014 WL 1249325, at *11 n.10 (M.D. Fla. Mar. 26, 2014); Birchfield v. Colvin, No. 8:13-cv-258, 2014 WL 794320, at *9 n.10 (M.D. Fla. Feb. 26, 2014); and Strickland v. Colvin, No. CV 112-171, 2014 WL 61348, at *4 (S.D. Ga. Jan. 7, 2014). I recommend this Court follow these decisions which explain that the ALJ's use of boilerplate credibility language is not reversible error when the ALJ otherwise sufficiently explains his credibility determination. Rosado, 2015 WL 892366, at *4; Strickland, 2014 WL 61348, at *4; Hadley, No. 2015 WL

327512, at *7; Fitzgerald v. Colvin, Case No. 2:13-cv-24-FtM-29CM, 2014 U.S. Dist. LEXIS 42102, at *25-26 (M.D. Fla. Mar. 6, 2014); Karboski v. Colvin, No. 8:12-cv-2033-T-33EAK, 2013 WL 3766598, at *9 n.16 (M.D. Fla. July 16, 2013).

Here, the ALJ provided the following discussion of Plaintiff's alleged impairments and the evidence of record to support the ALJ's credibility determination:

> Records from Community Health Centers show treatment for heavy menstrual bleeding on March 6, 2013 and an assessment for menorrhagia with normal Hgb level. A pelvic ultrasound study on March 13, 2013 was reported as being unremarkable with negative laboratory studies on March 22, 2013. On April 1, 2013 she returned with similar complaints of excessive menstruation and hypertension. (Exhibits B13F, B14F, and B19F)
>
> The claimant received emergency room services after a fall on July 29, 2013 with contusions on her left forearm and face. She reported she tripped over a drain cover while walking along a sidewalk. On neurological examination, she had normal gait, full strength and motion in all 4 extremities and intact sensation. She was treated and released the same day. (Exhibit B15F)
>
> Sleep studies on December 5, 2013 produced evidence of severe obstructive sleep apnea for which BiPap was prescribed. On December 16, 2013 Dr. H. Ghuildu reported an assessment for obstructive sleep apnea, unspecified hypersomnia, respiratory snoring, nocturia, and uncontrolled hypertension. The claimant denied having headaches, vision problems or change in weight; she also reported that her mood had been good and overall she was doing well. Blood pressure was 140/80, and no focal neurological deficits were noted. (Exhibit B18F)
>
> In summary regarding the claimant physical impairments, the record shows that she had a possible TIA[2] in 2006, affecting her left side. The claimant has alleged residual left-sided weakness and loss of balance, but there is no documented objective evidence of a neurological deficit in strength or

---

[2] "TIA" is short for a transient ischemic attack often labeled a "mini-stroke," or "warning stroke." www.strokeassociation.org/STROKEORG/AboutStroke/TypesofStroke/TIA/TIA-Transient-Ischemic-Attack_UCM_310942_Article.jsp#.WKHm0m8rKuk visited February 13, 2017.

sensation, or a gait disorder in the subsequent record. There is no evidence of a joint abnormality. (Exhibits B6F, B11F and B15F). The claimant has hypertension, that had been uncontrolled at times, but this has improved with medication and there is no report of ongoing end-organ damage. (Exhibit B18F). The claimant has been anemic associated with menorrhagia, but has not required repeated transfusions. Evaluations in 2013, showed unremarkable pelvic ultrasound and normal hemoglobin level (Exhibits B13F, B14F and B19F). The claimant has a documented Chiari formation[3], but this is stable on imaging, and the record does not show the sort of treatment generally associated with a disabling level of headaches, in regard to injections, pain management or repeated emergency room visits. In recent records, she reports doing well and denied headaches or vision problems. The claimant's primary issue outstanding issues appear to be related to difficulty swallowing secondary to the Chiari malformation and her obesity. Her PEG tube[4] has required repeated replacements, but she has been able to maintain and gain weight during this period, and no longer requires the tube. The functional impact of the claimant's weight and need for an abdominal feeding tube for a portion of the period at issue has been considered in conjunction with her other impairments, but is not found to be disabling. During the period in which she had the abdominal feeding tube, the claimant would require time at lunch for a feeding, but this can he accomplished during a regular lunch period. The claimant was more recently found to have obstructive sleep apnea, but this is being addressed with CPAP. Furthermore, while the claimant is morbidly obese, the evidence of record does not document any neurological or musculoskeletal deficits to support more significant exertional or non-exertional postural limitations, and there is only one reported occasion of edema. The record is consistent in showing normal gait and intact motor strength and sensation. There is no evidence of a visual impairment. The undersigned concludes that sedentary residual functional capacity with additional postural and environmental limitation adequately

---

[3] A "Chiari malformation … is a condition in which brain tissue extends into your spinal canal. It occurs when part of your skull is abnormally small or misshapen, pressing on your brain and forcing it downward." www.mayoclinic.org/diseases-conditions/chiari-malformation/home/ovc-20249651 visited February 13, 2017.

[4] "PEG tube refers to percutaneous endoscopic gastrostomy tube to provide nutrition and medications directly into the stomach of patients who are having trouble swallowing. my.clevelandclinic.org/health/articles/percutaneous-endoscopic-gastrostomy-peg visited February 13, 2017.

> encompasses the limitations that are supported by the record. The undersigned has also considered the claimant's daily activities of caring for her son, preparing meals, taking him to sports practice, cleaning, bathing, driving, shopping, using public transportation and managing her own finances
>
> In reaching the above conclusions, the undersigned has also considered the medical opinion evidence. A reviewing medical expert from the State agency concluded that the claimant was able to perform work at the light exertional level with no climbing ladders, ropes, scaffolds; occasional climbing ramps or stairs; occasional stooping, kneeling, crouching or crawling: and, the need to avoid concentrated exposure to vibrations, pulmonary irritants, and hazards such as machinery, heights, etc. (Exhibits B5A and B6A) Although greater limitations have been found in the decision based on the claimant's combined impairments, these conclusions are given significant weight in reaching a conclusion that greater limitation than found in the decision is not appropriate.
>
> Regarding the claimant's mental impairments, the record shows no evidence of mental health treatment, and a screening in November 2012, showed only minimal depression (Exhibit B11F). David Fleischman, Ph.D. performed a consultative psychological examination of the claimant on March 18, 2008. The claimant resided with her six-year old son and reported functioning independently with a range of daily activities including childcare and taking her son to sports games and practice. She reported ongoing applications for work. The examiner observed no overt symptoms of psychosis and no gait or coordination problems and no fine motor tremors. Speaking and thinking were simplistic, but considered logical and relevant with a full range of affect and no evident acute mental distress. The claimant was attentive, cooperative, well-motivated and well socialized. No memory problems were noted. WAIS-III testing produced a Verbal IQ score of 66; a Performance IQ score of 74; and, a Full Scale IQ score of 66. Dr. Fleischman diagnosed Mild Mental Retardation-provisional with the notation that her adaptive functioning levels appeared to be higher than mildly retarded. (Exhibit B2F).

(Tr. 27-29).

These findings are sufficient to demonstrate that the ALJ considered the evidence as a whole in assessing Plaintiff's credibility. Therefore, I respectfully recommend that the

district judge overrule Plaintiff's objection and affirm the ALJ's final decision.

### V. Recommendation

Upon consideration of the foregoing, I respectfully recommend that the Commissioner's final decision in this case be **AFFIRMED,** and that the Clerk be directed to enter judgment accordingly and **CLOSE** the file.

### VI. Notice to Parties

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. See 11th Cir. R. 3-1.

**RESPECTFULLY RECOMMENDED** in Orlando, Florida on February 14, 2017.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

    Presiding District Judge
    Counsel of Record